UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>BofI HOLDING, INC. SHAREHOLDER LITIGATION | Case No.: 3:15-cv-02722-GPC-KSC<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>**[Dkt. Nos. 68]**<br><br>**(2) GRANTING PLAINTIFFS' MOTIONS TO SEAL**<br><br>**[Dkt. Nos. 58, 63, 69]** |

## **INTRODUCTION**

The instant matter is a shareholder derivative suit, brought by stockholders of BofI Holding, Inc., on behalf of the company, against all eight members of BofI's Board of Directors ("the Board") and various other company officers.[1] Through this suit, Plaintiffs

---

[1] The Defendants are: Theodore C. Allrich, James S. Argalas, Eshel Bar-Adon, John Gary Burke, James J. Court, Uzair Dada, Gregory Garrabrants, Paul J. Grinberg, Andrew J. Micheletti, Nicholas A. Mosich, Edward J. Ratinoff, John C. Tolla, and Derrick K. Walsh.

seek to protect BofI and to recover against the directors and officers who have allegedly caused damage to the company. Defendants, in response, argue that Plaintiffs lack standing to bring this shareholder derivative suit because they have failed to plead "demand futility" as to a majority of BofI's Board.

There is no dispute that Plaintiffs did not make a demand upon the Board, requesting that they respond to the misconduct alleged herein, before filing the present suit. Thus, the key issue for this Court is whether or not Plaintiffs' failure to make a demand on the Board is rightfully excused under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23.1(b)(3).

Currently before the Court is Defendants' Motion to Dismiss the First Amended Consolidated Shareholder Derivative Complaint ("the ASC"), Dkt. No. 65, filed by BofI shareholders Andrew Calcaterra and Zhang Yong. Dkt. No. 68. The present motion follows Defendants' Motion to Dismiss the Consolidated Shareholder Derivative Complaint, which was granted on March 1, 2017. Dkt. No. 54. This motion to dismiss, like its predecessor, argues that Plaintiffs have failed to adequately plead "demand futility" under Fed. R. Civ. P. 23.1 and Delaware law. Based upon a review of the moving papers, the applicable law, and for the foregoing reasons, the Court disagrees that Plaintiffs have failed to plead demand futility and, therefore, **DENIES** Defendants' motion to dismiss.

## BACKGROUND

Nominal Defendant BofI Holding, Inc. ("BofI"), through BofI Federal Bank, provides online consumer and business banking products. ASC ¶¶ 2, 18. Its deposit products include consumer and business checking, demand, savings and time deposit accounts, and its loan portfolio primarily consists of residential single family and multifamily mortgage loans, commercial real estate secures and commercial lending products, finance factoring products, and other consumer lending products. *Id.* ¶ 2. Of chief importance to BofI Federal Bank is its practice of providing mortgages to high-net-worth individuals for the purchase of high-end properties. *Id.* ¶ 3.

An eight-member board of directors manages BofI. *See id.* ¶ 33. Those individuals include: James S. Argalas, member of the Board's Audit Committee and member of the Company's Internal Asset Review Committee; John Gary Burke, member of the Board's Compensation Committee and Chairman of the Internal Assets Review Committee of the Board; James J. Court; Uzair Dada; Gregory Garrabrants, BofI's CEO, President, and Director; Paul J. Grinberg, member of the Board's Compensation Committee and member of the Board's Audit Committee; Nicholas A. Mosich, Vice President of the Board and member of the Board's Audit Committee; and Edward J. Ratinoff, member of the Nominating Committee. *Id.* ¶¶ 19, 21, 22, 23, 24, 25, 26, 27, 30. Every member of the Board is named as a Defendant (hereinafter referred to as the "Director Defendants"). *Id.* ¶ 33. The other named Defendants are Eshel Bar-Adon, Executive Vice President and Chief Legal Officer of BofI; Andrew J. Micheletti, Executive Vice President and Chief Financial Officer; John C. Tolla, Chief Governance and Compliance Officer; and Derrick K. Walsh, Chief Accounting Officer and Senior Vice President. *Id.* ¶¶ 20, 28, 29, 31.

In October 2015, Charles Matthew Erhart, a former BofI internal auditor who allegedly raised compliance issues to senior management and federal regulators, *id.* ¶ 5, filed a whistleblower action against BofI. *See* Erhart v. BofI Holding, Inc., Case No. 15-cv-2287-BAS-NLS (S.D. Cal.) (filed Oct. 13, 2015). The whistleblower complaint alleged widespread wrongdoing at BofI. For example, Erhart alleged that senior officers at the company had instructed him to "refrain from putting anything in writing regarding the Company's violations of laws" and to "label anything he did in his audit function which might be incriminating as 'attorney work product/communication.'" ASC ¶ 5. Other allegations faulted BofI for to foreign nationals "who should have been off-limits under anti-money laundering laws," for keeping accounts without tax identification numbers "contrary to BofI's representations to the Office of the Comptroller of the Currency ("OCC")," and for otherwise failing to provide "full and timely information to regulators." *Id.*

The revelation of these and other allegations included in Erhart's complaint caused BofI's shares to fall by 30.2%, or by $42.87, to $99.13 by the close of business on October 14, 2015. *Id.* ¶ 6. The accusations aired in the complaint have also led to a class action lawsuit for securities fraud. *See* In re BofI Holding, Inc. Sec. Litig., 3:15-cv-02324-GPC-KSC (S.D. Cal.) (filed October 15, 2015).

In response to these and other allegations, Plaintiffs, all of whom held BofI stock during the relevant period, brought this derivative action.[2] ASC ¶¶ 15-16. They allege that from February 6, 2013 to the present, BofI's officers engaged in misconduct by causing BofI to issue false or misleading statements about the company's condition and/or by failing to disclose that: (1) BofI's internal controls were inadequate and "frequently disregarded"; (2) that BofI's portfolio contains loans to foreign nationals who are off-limits because of federal anti-money laundering laws; (3) that many of BofI's accounts lacked tax identification numbers; and (4) that Defendants violated the anti-retaliation laws of the Sarbanes-Oxley Act of 2002 ("SOX") and the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act") by allegedly firing Erhart in retaliation for his whistleblowing. *See id.* ¶¶ 4-5.

Based on these representations of wrongdoing, Plaintiffs assert three claims against all the Defendants, namely, (1) breach of fiduciary duties, (2) abuse of control, (3) unjust enrichment, and one claim, (4) breach of duty of honest services,[3] against Defendants Garrabrants, Micheletti, Bar-Adon, Tolla, and Walsh only. *Id.* ¶¶ 238-59.

As stated previously, Plaintiffs did not make a demand on BofI's Board, urging them to institute this action against the individual Defendants, before filing their amended shareholder complaint. ASC ¶ 211. Plaintiffs allege that making such a demand would have been futile because a majority of the Board lacks independence or faces a

---

[2] Plaintiffs filed their initial complaint on December 3, 2015 and their consolidated shareholder complaint (*i.e.*, the CSC), which contains the same causes of action, on August 26, 2016.

[3] Although phrased as its own cause of action, the ASC describes the breach of the duty of honest services as a breach of the duty of loyalty, which is a fiduciary duty. *Id.* ¶¶ 245-60.

substantial likelihood of liability for their misconduct, thus rendering them incapable of fairly considering a demand. *See id.*

## **LEGAL STANDARD**

### A. Fed. R. Civ. P 23.1

A derivative shareholder's claim allows an individual stockholder to bring "suit to enforce a corporate cause of action against officers, directors, and third parties." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)). "Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Id.* (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)) (quotations omitted).

This derivative right, however, is not absolute. Before a shareholder can act on behalf of the corporation in this manner, he or she must demonstrate "that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Id.* at 95-96 (quoting *Ross*, 396 U.S. at 534). This precondition is codified at Federal Rule of Civil Procedure 23.1:

> The complaint must be verified and must: . . . (3) *state with particularity*: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) *the reasons for not obtaining the action or not making the effort*.

Fed. R. Civ. P. 23.1 ("Rule") (b)(3) (emphasis added). Rule 23.1 provides the pleading standard for measuring the factual detail present in a shareholder complaint, but does not provide the substantive rule for assessing what reasons are sufficient to excuse demand on the corporation. *See Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014). That rule is supplied by the law of the state of incorporation, *Kamen*, 500 U.S. at 109, which in this case is Delaware, BofI's state of incorporation, *see* ASC ¶ 18.

/ / / /

/ / / /

5

3:15-cv-02722-GPC-KSC

**B. Demand Futility Under Delaware Law**

In order to show demand futility under Delaware law, a shareholder must satisfy one of two tests. *Rosenbloom*, 765 F.3d at 1149-50. The *Aronson* test applies when a shareholder challenges a decision made, or a transaction entered into, by the corporation's board of directors. *See Rales v. Blasband*, 634 A.2d 927, 932-33 (Del. 1993). To satisfy the *Aronson* test a shareholder must allege particularized facts giving rise to a reasonable doubt that, at the time the complaint was filed, (1) the directors were disinterested and independent or (2) the underlying transaction was the product of a valid exercise of business judgment. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999) (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).

Alternatively, if the shareholder does not challenge a board decision, but board inaction, for instance, then the *Rales* test applies. *Rosenbloom*, 765 F.3d at 1150. The *Rales* test requires a stockholder to put forth particularized factual allegations that "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to demand." *Rales*, 634 A.2d at 934. Stated differently, the *Rales* test requires the shareholder to satisfy the first prong of the *Aronson* test. *In re Bidz.com Deriv. Litig.*, 773 F. Supp. 2d 844, 852 (C.D. Cal. 2011).

**1. Particularity Requirement**

Delaware Rule 23.1, like its federal counterpart, requires a shareholder to plead facts with particularity, which is a more stringent standard than that required by ordinary notice pleading. *See Brehm*, 746 A.2d at 255 ("[t]hose pleadings must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings"). The rationale behind Delaware Rule 23.1's heightened pleading standard, the Delaware Supreme Court has noted, is two-fold:

////

////

> *Aronson* and its progeny is designed to create a balanced environment which will: (1) on the one hand, deter costly, baseless suits by creating a screening mechanism to eliminate claims where there is only a suspicion expressed solely in conclusory terms; and (2) on the other hand, permit suit by a stockholder who is able to articulate particularized facts showing that there is reasonable doubt either that (a) a majority of the board is independent for purposes of responding to the demand, or (b) the underlying transaction is protected by the business judgment rule.

*Id.* at 255 (citing *Grimes v. Donald*, 673 A.2d 1207, 1216-17 (Del. 1996)). Cast in this light, Delaware's particularity requirement is seen not just as a rigid procedural requirement but as a substantive rule of Delaware law that requires plaintiffs to make a strong, threshold showing that making a pre-suit demand would have been futile. *See In re Sonus Networks, Inc., S'holder Deriv. Litig.*, 499 F.3d 47, 66 (1st Cir. 2007) (applying Delaware law on demand futility).

Accordingly, when assessing a motion to dismiss for failure to comply with the requirements of Federal Rule 23.1 and Delaware law, a court should credit the shareholders with "all reasonable factual inferences that logically flow from the particularized facts alleged." *Rosenbloom*, 765 F.3d at 1148. A court should not, however, take as true "conclusory allegations of facts or law not supported by allegations of specific fact." *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1079 (C.D. Cal. 2008) (quoting *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991)) (internal quotations omitted). "Conclusory allegations" are those that add "no, or only *de minimis*, substance to the Court's demand-futility inquiry." *See Khanna v. McMinn*, 2006 WL 1388744, *14 (Del. Ch. May 9, 2006). By contrast, particularized facts are "substantive allegations that are by themselves insufficient but, when viewed *in toto*, may push the analysis over the threshold of "reasonable doubt" and thereby excuse [ ] demand." *Id.*

## DISCUSSION

"[T]he Rule 23.1 demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed," not when the original complaint was filed. *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006). Stated differently,

7

shareholders permitted leave to file an amended complaint "must make a demand on the board of directors in place at that time the amended complaint is filed or demonstrate that demand is legally excused as to that board." *Id.* Previously, when this Court passed upon Defendants' first motion to dismiss, it assessed whether Plaintiffs' demand futility allegations impugned a majority of BofI's nine-person Board. Here, however, the Court's analysis will be distinct because the Board now only has eight members.

There is no dispute that Theodore C. Allrich, a BofI founder and long-time director, retired from the Board in February 2017. Dkt. No. 68-1 at 19. There is also no dispute that Plaintiffs filed their ASC on April 10, 2017 and that the Board of Directors, at that time, contained only eight members. When a board of directors is comprised of an even-numbered amount of directors, a plaintiff must demonstrate that exactly half of the directors "were incapable of considering demand." *In re INFOusa, Inc. S'holder Litig.*, 953 A.2d 963, 989-90 (Del. Ch. 2007). Accordingly, and as conceded by Defendants, Plaintiffs' current burden is to demonstrate that four of the eight Director Defendants were interested or lacking in independence at the time Plaintiffs filed their amended shareholder complaint. *See* Dkt. No. 68-1 at 20. For the following reasons, and notwithstanding Defendants' arguments to the contrary, the Court finds that Plaintiffs have pled sufficient allegations under Delaware law to demonstrate that it would have been futile to make a shareholder demand upon Director Garrabrants along with Directors Grinberg, Mosich, and Allrich, who sit on BofI's audit committee. Demand, therefore, was excused.

**1. Director Garrabrants**

Plaintiffs allege that Director Garrabrants lacks independence and that he faces a substantial likelihood of liability for his individual misconduct. ASC ¶ 213. Specifically, Plaintiffs contend that "If Garrabrants pursued these derivative claims, then that would expose his own misconduct in the class action for violations of the federal securities laws." *Id.* ¶ 214. As such, Plaintiffs argue "Garrabrants is fatally conflicted and, therefore, unable to render a disinterested decision as to whether the Company should

8

pursue these derivative claims." *Id.* ¶ 215. Defendants, in turn, do not meaningfully respond to Plaintiffs' arguments concerning Garrabrants' independence. Dkt. No. 68-1 at 7 n.2 ("Defendants do not concede that Garrabrants is conflicted . . . . Nevertheless, as a single director on an eight-person Board, Garrabrants' independence and disinterestedness is not necessary for the Court to grant defendants' motion to dismiss under Rule 23.1").

"Directors who are sued have a disabling interest for pre-suit demand purposes when the potential for liability is not a mere threat but instead may rise to a substantial likelihood." *Ryan v. Gifford*, 918 A.2d 341, 355 (Del. Ch. 2007); *see also Rattner v. Bidzos*, 2003 WL 22284323, *9 (Del. Ch. Sept. 30, 2003) ("[A] 'substantial likelihood' of personal liability prevents a director from impartially considering a demand."). In order to demonstrate that a director defendant faces a substantial likelihood of liability sufficient to excuse demand, the shareholders must make a "threshold showing, through the allegation of particularized facts, that their claims have some merit." *Rosenbloom*, 765 F.3d at 1149 (citing *Rales*, 634 A.2d at 934).

Here, Plaintiffs allege that Garrabrants and the other Director Defendants breached their duties of candor and loyalty "in the management and administration of BofI's business and affairs, particularly with respect to issues regarding the Company's compliance with laws."[4] ASC ¶ 239. Directors violate the duty of loyalty when they "fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities [and] failing to discharge [the non-exculpable] fiduciary duty of loyalty in good faith." *Stone ex rel AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006). The duty of candor, derived from the fiduciary duties of care, loyalty and good faith, requires board members to disclose all material facts when

---

[4] The ASC also alleges that Defendants have breached their duty of "good faith." ASC ¶ 239. The Court notes, however, that the duty of good faith is a "subsidiary element" or a "condition" of the "fundamental duty of loyalty," and therefore is not a separate, stand-alone fiduciary obligation. *See Stone ex rel AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 371 (Del. 2006).

9

seeking stockholder action. *See Malone v. Brincat*, 722 A.2d 5, 11 (Del. 1998). "The essential inquiry in such an action is whether the alleged omission or misrepresentation is material" and "[m]ateriality is determined with respect to the shareholder action being sought." *Id.*

There is little doubt, here, that Plaintiffs' claims for breach of loyalty and candor have "some merit," *see Rosenbloom,* 765 F.3d at 1149, because the facts that underlay these claims are substantially the same as those that have survived scrutiny in the related class action case for securities fraud. Plaintiffs allege that making a demand upon Garrabrants would have been futile because he already faces a substantial likelihood of liability for his misconduct. Garrabrants, Plaintiffs contend, is "a named defendant in the currently-pending federal class actions, alleging he violated § 10(b) of the Exchange Act and Rule 10b-5 when he disseminated or approved the false and misleading statements." ASC ¶ 145. Thus, Plaintiffs argue, because "pursu[ing] these derivative claims . . . would expose his own misconduct in the class action for violations of the federal securities laws . . . Garrabrants is fatally conflicted and, therefore, unable to render a disinterested decision as to whether the Company should pursue these derivative claims." *Id.* ¶ 146.

The Court agrees. The securities class action lawsuit alleges that Garrabrants violated Section § 10(b) by knowingly making material false and misleading statements concerning the adequacy of BofI's internal controls, compliance infrastructure, and loan underwriting standards. *See In re BofI Holding, Inc. Sec. Litig.*, 3:15-cv-02324-GPC-KSC, 2017 WL 3118769 (S.D. Cal. July 21, 2017). More specifically, the class action plaintiffs allege that Garrabrants committed securities fraud by endorsing the strength of BofI's lending standards and compliance infrastructure when he, in fact, had first-hand knowledge that BofI was engaging in risky lending and auditing practices. *See id.* And although Defendants have twice attempted to dismiss the class action claims lodged against Garrabrants, this Court has twice held that the factual allegations contained therein were particularized enough to survive the heightened pleading standards of the Private Securities Litigation Reform Act and Rule 9(b). *See id.*

Accordingly, and given that the misconduct alleged in the ASC is coterminous with the misconduct alleged in the class action securities fraud case, the Court concludes that Garrabrants faces a substantial likelihood of liability for breaching his fiduciary duties to the company. *See In re Cendant Corp., Deriv. Action Litig.*, 189 F.R.D. 17, 119 (D.N.J. 1999) (finding that director defendants were interested because they were defendants in "other pending class action suits arising out of the" misconduct underlying the shareholder complaint); *see In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 275 (S.D.N.Y. 2006) (concluding that director defendant faced substantial likelihood of liability, in part, because the court had declined to dismiss the class action securities fraud complaint against the director defendant). As such and especially in light of the fact that Defendants have offered no arguments in defense of Garrabrants' independence, the Court concludes that Plaintiffs have pled enough to demonstrate that Garrabrants has a "disabling interest for pre-suit demand." *Ryan*, 918 A.2d at 355.

### 2. Audit Committee Defendants

Next, the Court turns to whether it would have been futile to make a demand on those Directors Defendants who also comprise BofI's Audit Committee. Plaintiffs argue that "ample fact-specific allegations demonstrate that the Audit Committee Defendants — Grinberg, Mosich, and Argalas — directly participated in retaliating against Erhart since as early as December 2014." Dkt. No. 70 at 13. Accordingly, they argue, it would have been futile to make a demand upon these individuals because they were not disinterested or independent with regards to the subject matter of the shareholder complaint. *See id.* Defendants, in response, predominantly argue that the ASC's allegations against the Audit Committee Defendants are too general to impugn them with regards to any alleged retaliation of Erhart. Dkt. No. 68-1 at 19-23. For the following reasons, however, the Court is not persuaded that the ASC's allegations against the Audit Committee Defendants are insufficient under Rule 23.1.

Because Plaintiffs are challenging the Audit Committee's alleged retaliation against Erhart, the *Aronson* standard applies. *See Rales*, 634 A.2d at 932-33. As such, in

order for demand to be excused, Plaintiffs must have pled particularized facts giving rise to a reasonable doubt that the Audit Committee Defendants are independent and disinterested or that the decision to retaliate against Erhart was a valid exercise of business judgment. *In re Silicon Graphics*, 183 F.3d at 990. In reaching a determination under *Aronson*, Delaware courts emphasize that a district court should not focus on any single factor, but rather examine "whether the accumulation of all factors creates the reasonable doubt to which *Aronson* refers." *Harris v. Carter*, 582 A.2d 222, 229 (Del. Ch. 1990). Whether a director defendant, therefore, has the ability to impartially consider a demand is "context-dependent and fact-specific." *In re MIPS Techs., Inc. Deriv. Litig.*, 542 F. Supp. 2d 968, 977 (N.D. Cal. 2008).

Defendants continue to assert, as they did in their previous motion, that the ASC has failed to plead with particularity that the Audit Committee Defendants, or any of the Director Defendants, fired Erhart. Dkt. No. 68-1 at 22 ("In sum, plaintiffs allege no facts showing the Audit Committee or its members fired Erhart . . . ."). Yet while the Court found this argument to be dispositive with regards to Plaintiffs' consolidated shareholder complaint, the Court does not find this contention convincing, here.

In the March 1, 2017 Order granting Defendants' motion to dismiss, this Court concluded that there were insufficient allegations from which to infer that the entire Board had fired Erhart on June 9, 2015. Dkt. No. 54 at 19-20. In reaching this conclusion, the Court emphasized that the CSC had failed to plead with particularity that the Board had fired Erhart because it included no specific allegations against Director Defendants Allrich, Court, Dada, Burke and Ratinoff. *Id.* at 21 ("In other words, the CSC's complete failure to lodge allegations against Allrich, Court, Dada, Burke, or Ratinoff and to offer particularized facts demonstrating that they participated, in bad faith, in the decision to fire Erhart is fatal to their demand futility argument."). Accordingly, and because the CSC was silent as to five of the nine board members, the Court concluded that it was not reasonable to infer that the entire Board fired Erhart when

there were no particularized allegations that impugned Allrich, Court, Dada, Burke, or Ratinoff.

This analysis, however, has been altered by the retiring of Director Allrich. Whereas before Plaintiffs' demand futility argument depended upon raising a reasonable doubt that Allrich, Court, Dada, Burke, or Ratinoff were disinterested and independent, now, Plaintiffs need only additionally challenge the independence of the Audit Committee Defendants in order to plead demand futility. As such and given that Plaintiffs' demand futility allegations now rest with Grinberg, Argalas, and Mosich, the Court has reason to conclude what was not necessary to conclude in its March 1, 2017 Order.

Having reviewed the ASC's allegations against the Audit Committee Defendants for the second time, the Court finds that the ASC contains enough particularized factual allegations to infer that the Audit Committee Defendants retaliated against Erhart. The ASC alleges with particularity when and how Grinberg, Mosich, and Argalas learned of Erhart's alleged whistleblowing activities. Plaintiffs allege that in mid-December 2014, Jonathan Ball, the Vice President of Internal Audit (*id.* ¶ 65), drafted an evaluation of Erhart's job performance. *Id.* ¶ 222. That performance was later revised by Defendant Tolla, who "downgraded Erhart's performance in retaliation for his whistleblowing activities." *Id.* Ball, who was troubled by Tolla's actions, then "directly advised the Audit Committee about Tolla's downgrading of Erhart's performance evaluation." *Id.*

In response to these allegations, Defendants argue that the Audit Committee's "mere knowledge" of Erhart's activities is not enough to demonstrate that they retaliated against Erhart. Dkt. No. 68-1 at 22. This line of argument, however, underestimates the particularized facts in the complaint. The Court was unwilling, in the March 1, 2017 Order, to conclude that the entire Board fired Erhart because the ASC did no more than allege that Ratinoff, Dada, Burke, Court, and Allrich had "knowledge" of Erhart's whistleblowing activities. Dkt. No. 54 at 19-21. The same, however, cannot be said of the Audit Committee Defendants.

13

The ASC's particularized allegations, and the reasonable inferences drawn from them, demonstrate that the Audit Committee, at the very least, ratified the decision to retaliate against Erhart. The Audit Committee, unlike the rest of the Director Defendants, had direct knowledge not only of Erhart's whistleblowing activities, but of the fact that Tolla, BofI's Executive Vice President and Chief Financial Officer, had "downgraded" Erhart's 2014 performance evaluation. ASC ¶ 221. According to the ASC, the Audit Committee Defendants also "directed Bar-Adon to meet with Erhart" regarding his whistleblowing activities, as was evidenced by the fact that Bar-Adon approached Erhart, on March 12, 2014, in order to speak with him in his capacity as "General Counsel to the Audit Committee." *Id.* ¶ 223. That the Audit Committee Defendants knew that a BofI officer had "downgraded" Erhart, but did nothing to restore Erhart's performance evaluation or to prevent his firing on June 9, 2015, gives rise to the reasonable inference that Grinberg, Mosich, and Argalas ratified retaliation against Erhart. *See Rosenbloom*, 765 F.3d at 1153.

In drawing this inference, the Court is unmoved by Defendants' insistence that the Court should instead draw reasonable inferences in favor of Defendants. Dkt. No. 68-1 at 23 ("Although plaintiffs ask the Court to draw the inference that the Audit Committee 'ratified' retaliation against Erhart, the Court could just as easily conclude that the Audit Committee believed Erhart's performance evaluation was justified or that the Audit Committee decided to delegate the issues concerning the performance evaluation of a low-level junior auditor to those with first-hand knowledge of his performance."). When assessing a shareholder's demand futility allegations, courts "must make reasonable inferences for Plaintiffs, not against them." *Rosenbloom*, 765 F.3d at 1153. Accordingly, the Court rejects Defendants' invitation to find that Tolla's downgrading of Erhart's performance evaluation could have been unrelated to Erhart's whistleblowing activities. Given that the ASC directly implicates Tolla in misconduct uncovered by Erhart, *see* ASC ¶ 223 (describing how Tolla instructed Erhart "to never state in an audit report that BofI had violated a federal or state law"), and given that Ball resigned not long after he

14

3:15-cv-02722-GPC-KSC

raised Erhart's performance evaluation to the attention of the Audit Committee, *id.* ¶ 122 ("On March 5, 2015, Ball — BofI's Vice President-Internal Audit and Mr. Erhart's supervisor — resigned abruptly"), the Court finds it reasonable to infer that Tolla retaliated against Erhart for his whistleblowing activities and that the Audit Committee ratified that decision by failing to correct Erhart's performance evaluation and failing to prevent his eventual termination on June 9, 2015.

Because the Court finds that it is reasonable to infer that the Audit Committee Defendants, at the very least, ratified the decision to retaliate against Erhart, the Court likewise concludes that Grinberg, Mosich, and Argalas are compromised for purposes of demand futility. Plaintiffs' primary theory of fiduciary liability against the Audit Committee Defendants is that they "acted in bad faith and breached [their] duty of loyalty to the Company" by causing, ratifying, or failing to rectify the company's retaliation of Erhart. *See id.* ¶¶ 183-202. It is hard to imagine, however, that the Audit Committee Defendants could have focused on the corporate merits of these fiduciary claims, when they directly arise from the Audit Committee Defendants' alleged mishandling of Erhart's whistleblower complaint. *See Aronson*, 473 A.2d at 816 ("A director is independent if the 'director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences.'"). Accordingly and given that the Audit Committee Defendants were well aware of Erhart's alleged whistleblowing activities, Tolla's retaliation against him, and his subsequent termination, the Court finds that Grinberg, Mosich, and Argalas could not have impartially considered a demand against them.

Moreover and importantly, this is not a case where the shareholders have merely argued that the director defendants could not have impartially considered a demand simply because the shareholder derivative complaint lodges claims against the board. *See Aronson*, 473 A.2d at 818 (concluding that demand is not excused simply because directors would have to sue themselves, shareholders must alleged particularized facts to overcome director independence); *see also Jones ex rel. CSK Auto Corp. v. Jenkins*, 503

F. Supp. 2d 1325, 1333 (D. Ariz. 2007) ("plaintiff may not 'bootstrap allegations of futility' by pleading merely that 'the directors participated in the challenged transaction or that they would be reluctant to sue themselves.'"). Instead, this is case where Plaintiffs have pled with particularity precisely how the Audit Committee Defendants were involved in ratifying the decision to retaliate against Erhart. *See Jenkins*, 503 F. Supp. 2d at 1333 ("complaint must include particularized allegations detailing the precise roles that these directors played") (internal citations omitted). As such, the Court concludes that the Audit Committee Defendants, like Garrabrants, are not "disinterested and independent" for purposes of demand futility.

## CONCLUSION

For the foregoing reasons, and because the Court finds that four of the eight Director Defendants cannot impartially consider a demand, the Court **DENIES** Defendants' motion to dismiss the amended shareholder complaint. Dkt. No. 68.

The Court also **GRANTS** Plaintiffs' motions to (1) seal portions of the ASC, Dkt. No. 58, 63, and (2) portions of their response opposition, Dkt. No. 69, because the redacted portions of Plaintiffs' submissions contain nonpublic, confidential, proprietary, or commercially sensitive information of nominal defendant BofI that is subject to a confidentiality agreement between the parties. *See* Dkt. No. 37. Accordingly, and given that Defendants have not opposed the requests to seal, the Court concludes it is appropriate to grant Plaintiffs' motions. *Kamdem-Ouaffo v. Idahoan Foods, LLC*, 4 — F. Supp. 3d — , 2017 WL 1073350, *12 (D. Idaho 2017) ("Courts commonly seal business or financial information that is otherwise kept confidential, where such documents could be used to a company's disadvantage.").

Finally, Defendants' request that the Court take judicial notice of BofI's Form 8-K filed with the SEC is **DENIED** as moot because it was irrelevant to the Court's review of the ASC. Dkt. No. 68-2.

/ / / /

/ / / /

16

3:15-cv-02722-GPC-KSC

**IT IS SO ORDERED.**

Dated: August 8, 2017

Hon. Gonzalo P. Curiel
United States District Judge