UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| IN RE BofI HOLDING, INC. SHAREHOLDER LITIGATION | Case No.: 3:15-cv-02722-GPC-KSC<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO STAY [ECF No. 118]; and**<br><br>**(2) DENYING AS MOOT MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT [ECF No. 119]** |
|---|---|

### I.   Background

This shareholder derivative action was first filed on December 3, 2015.  (ECF No. 1.)  On June 9, 2016, the Court granted a motion to consolidate this case with several others.  (ECF No. 31.)  On August 26, 2016, Plaintiffs filed the first consolidated complaint.  (ECF No. 36.)

On March 1, 2017, the Court granted Defendants' motion to dismiss the first consolidated complaint on the ground that the complaint failed to allege demand futility.  (ECF No. 54.)  The Plaintiffs responded by filing an amended shareholder complaint (the "ASC") on April 10, 2017.  (ECF No. 65.)  Defendants again moved to dismiss on the

ground of demand futility. (ECF No. 68.) Because of an intervening change of the membership of BofI's Board of Directors, the Court found that Plaintiffs had adequately alleged demand futility. (ECF No. 75.)

On March 7, 2018, Defendants filed a motion for judgment on the pleadings in which they asserted that the ASC's substantive allegations of liability were inadequate. (ECF No. 95.) The Court granted the motion in part, concluding that a sizeable portion of Plaintiffs' claims was unripe because it was based on liability BofI might have to pay in the future in two separate cases: (1) a whistleblower protection lawsuit filed by former BofI employee Charles Matthew Erhart, which is pending before a different judge in this district, and (2) a related securities class action, which this Court had recently dismissed for failure to allege loss causation, and which is now on appeal. The Court also concluded that the ASC's allegations describing BofI's harm were, for the most part, too vague to support Article III standing. The Court determined that the only claim in the ASC (1) for which BofI's injury was not contingent upon the outcome of other litigation and (2) that "identifie[d] an actual concrete injury sufficient to support an assertion of Article III standing" was Plaintiffs' claim that alleged wrongdoing by four of Defendants caused BofI to have to engage in an internal investigation into allegations of wrongdoing originally reported by Erhart. (*Id.* at 21–27.)

At the end of its ruling, the Court noted that Plaintiffs had two options in how to respond to the Court's decision: (1) "proceed only on the claims relating to actions by Defendants that caused BofI to investigate Erhart's allegations," or (2) "seek a stay of this case until the unripe claims become ripe, at which time the Court can proceed with all of Plaintiffs' surviving claims at the same time." (*Id.* at 27.) The Court nonetheless ordered Plaintiffs, regardless of their choice between those two options, to amend the ASC. This was because the ASC was so prolix that it failed to comply with Federal Rule of Civil Procedure 8. Such a second amended complaint, the Court ordered, must (1) "be confined to relevant allegations of wrongdoing," and (2) name as defendants only those "against whom specific conduct is alleged." (*Id.*)

Plaintiffs have filed a motion to stay this case until the conclusion of the *Erhart* and securities fraud lawsuits. (ECF No. 118.) Plaintiffs have also filed a motion for a "deferral" of the deadline to file a second amended consolidated complaint, asking the Court to extend that deadline until 30 days after the proposed stay is lifted. (ECF No. 119.) Defendants oppose both motions. (ECF Nos. 121, 123.) For the reasons set forth below, the Court finds that under Supreme Court and Ninth Circuit case law, the stay proposed by Plaintiffs is not appropriate.

## II. Legal Standard

Federal district courts have an inherent power to issue stays of cases before them. The Supreme Court appears to have first described this power in *Landis v. North American Co.*, 299 U.S. 248 (1936). There, the Court explained that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* at 254.

The *Landis* Court nonetheless explained that district courts must follow at least two guidelines when evaluating a request to stay a pending case. First, the party requesting the stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* at 255. The Ninth Circuit has, on multiple occasions, emphasized this requirement. *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("*Landis* cautions that 'if there is even a fair possibility that the stay . . . will work damage to some one else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'"); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109–13 (9th Cir. 2005) (quoting this requirement and holding that "the balance of hardships between the parties" did not justify a stay). In *Dependable Highway Express*, the court held that the district court committed an error of law by ignoring this test. 498 F.3d at 1067 ("Because[, *inter alia*,] the stay is likely to do damage to Dependable [who opposed the stay], . . . the district court misapplied

*Landis* . . . , committing an error of law which rendered the order an abuse of discretion.").

Second, the stay's duration must be reasonable. In *Landis*, the district court's stay was to be lifted only after the separate lawsuit on which the stay was based passed Supreme Court review. 299 U.S. at 253. The *Landis* Court held that imposing a stay of that length was an abuse of the district court's discretion. It explained that the related litigation had been proceeding for at least a year, and that "with the possibility of an intermediate appeal to the Circuit Court of Appeals, a second year or even more may go by before this court will be able to pass upon the" relevant issues.[1] *Id.* at 256. The Ninth Circuit has reformulated this discussion into the following test: "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of Cal.*, 593 F.2d 857, 864 (9th Cir. 1979).

In light of *Landis*, the Ninth Circuit has characterized the three considerations a district court should take into account before entering a stay as follows: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

**III. Discussion**

Before engaging in the analysis described above, the Court finds it necessary to

---

[1] It should also be noted that the *Landis* Court expressly rejected the assertion that the stay was reasonable because the party opposing the stay could later ask to vacate the stay if it became "oppressive." *Id.* at 257 ("The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description. . . . [A]n order which is to continue by its terms for an immoderate stretch of time is not to be upheld as moderate because conceivably the court that made it may be persuaded at a later time to undo what it has done.").

4

reject out of hand two assertions made by Defendants in their opposition to the Plaintiffs' stay motion. First, Defendants argue that the Court lacks the power to stay this case because, at this moment, there is no operative pleading. That is incorrect. In its ruling on Defendants' motion for judgment on the pleadings, the Court did not dismiss the entire ASC. Rather, the Court granted Defendants' motion in part. While the Court did order Plaintiffs to re-work the complaint—because the ASC's length and inclusion of irrelevant information made evaluation of the surviving claims too difficult—the Court did not dismiss the ASC in its entirety. Second, Defendants assert that the stay requested by Plaintiffs is "indefinite." That is also incorrect. The stay, as proposed, would last until the conclusion of both the *Erhart* and securities fraud lawsuits. (ECF No. 118-1 at 3.[2])

Upon consideration of the relevant factors and standards, however, the Court concludes that the stay proposed by Plaintiffs is not appropriate. Defendants' entitlement to reasonably speedy resolution of serious claims against them would be harmed by the proposed stay. The trial in *Erhart* is currently set for almost a year from now. *See Erhart v. BofI Holding, Inc.*, No. 3:15-cv-02287-BAS-NLS, ECF No. 62 at 5 (setting a trial date of June 11, 2019). If the judgment in that case is appealed, the delay would be substantial. As for the securities fraud litigation, a delay could be even longer. The issue currently on appeal in that case is whether the plaintiffs' allegations of loss causation were sufficient to state a claim for securities fraud. The notice of appeal on that issue was only recently filed, and no argument has been scheduled. *See In re BofI Holding, Inc. Secs. Litig.*, No. 18-55415 (9th Cir.). If the Ninth Circuit reverses the Court's dismissal, the merits of that lawsuit will not be determined until years from now. If, on the other hand, the Ninth Circuit affirms the Court's dismissal of that case on the basis of the plaintiffs' failure to plead loss causation, a stay based on that litigation would have been pointless. Thus, while the proposed stay is not "indefinite" as Defendants suggest,

---

[2] References to specific page numbers correspond to the pagination provided by the CM/ECF system.

its potential length appears to be unreasonable.

The Court recognizes that some district courts in this circuit have suggested that such a general assertion of harm—that is, that a "cloud" will hang over Defendants during the pendency of a stayed lawsuit—is inadequate to oppose a stay. In *Aliphcom v. Fitbit, Inc.*, for example, the district court rejected such an assertion of prejudice as "inadequately articulated." 154 F. Supp. 3d 933, 937–38 (N.D. Cal. 2015). But even if those courts' view is correct, Defendants here have identified a specific harm that delayed resolution of this case will cause them: a stay here would affect their professional interests because they must list pending litigation on all "loan applications, licensure applications and applications to serve on corporate boards." (ECF No. 121 at 7.)

As for Plaintiffs, they have not demonstrated that the requested stay will prevent "hardship or inequity" on their end. *Landis*, 299 U.S. at 255. The Court is unpersuaded by Plaintiffs' arguments to the contrary. First, Plaintiffs claim that a stay would ensure that BofI obtains "complete relief" in light of the fact that many of the claims they wish to assert are "contingent upon the outcome of the Whistleblower Action and the Securities Class Action."[3] (ECF No. 124 at 7.) The Court does not see how this is so. Proceeding with the currently ripe and properly alleged claims in this case now will not harm BofI's ability to recoup all the damages to which it eventually might be entitled. If either (or both) of the *Erhart* or securities fraud actions conclude in those plaintiffs' favor, Plaintiffs in this case will be able to pursue claims against Defendants based on that liability. If, by that time, this litigation is still ongoing, Plaintiffs could add those claims in this case. If this litigation has since concluded by the time those additional claims becomes ripe, Plaintiffs may file a new suit.

Moreover, proceeding with Plaintiffs' currently ripe claims now—rather than

---

[3] Because this is a derivative shareholder suit, the Court must take particular account of the interests of BofI, the corporation on whose behalf Plaintiffs are taking action. *Rosenblum ex rel. Amgen, Inc. v. Sharer*, No. CV 07-6140 PSG (PLAx), 2008 WL 9396534, at *8 (C.D. Cal. July 28, 2008).

waiting years for the other lawsuits to conclude—might allow BofI to obtain some relief much sooner, which would be in the company's interest. Any costs BofI avoids by staying this litigation would be counteracted by the delay in BofI being able to recoup any losses resulting from the alleged conduct underlying Plaintiffs' claims. This case is already old: come December, it will begin its fourth year. BofI's countervailing interest in timely obtaining at least some recompense as a result of Defendants' alleged wrongdoing limits any benefits the proposed stay could provide to Plaintiffs. As a result, Plaintiffs have "not made out [the] 'clear case of hardship or inequity'" necessary to show the appropriateness of their proposed stay. *Lockyer*, 398 F.3d at 1112 (quoting *Landis*, 299 U.S. at 255).

The factors just discussed make the circumstances here unlike those in the cases cited by Plaintiffs, in which the courts found it appropriate to stay a derivative action during the pendency of a related securities fraud action. *See In re First Solar Deriv. Litig.*, No. CV-12-00769-PHX-DGC, 2012 WL 6570914 (D. Ariz. Dec. 17, 2012); *In re Ormat Techs., Inc.*, No. 3:10-cv-00177-ECR-RAM, 2011 WL 3841089 (D. Nev. Aug. 29, 2011); *Rosenblum ex rel. Amgen, Inc. v. Sharer*, No. CV 07-6140 PSG (PLAx), 2008 WL 9396534 (C.D. Cal. July 28, 2008). Those cases presented run-of-the-mill circumstances of parallel securities fraud and derivate lawsuits in which the securities fraud litigation was proceeding on the merits in the district court at the time the stay was requested. *First Solar*, 2012 WL 6570914, at *1–2; *Ormat Techs.*, 2011 WL 3841089, at *1–3; *Rosenblum*, 2008 WL 9396534, at *1. Notably, in all three of those cases, the district judge assigned to the derivative case was also handling the securities fraud case. The judges in those cases were in a good position to ensure that the underlying securities case to which the stay was tied proceeded expeditiously. Indeed, the court in *First Solar* relied on this fact in finding that the stay was appropriate. 2012 WL 6570914, at *2 ("Plaintiffs argue that the corporation will be harmed by a stay because their litigation could be delayed for years. *The Court has no intention of permitting the* [*securities*] *class action to be litigated for years. The Court will set a vigorous schedule for resolution of*

*the class action and will hold th*[*e*] *parties to that schedule.* Indefinite delay will not occur." (emphasis added)). Here, by contrast, both cases on which the proposed stay would rely are at this moment out of this Court's hands. While the undersigned is assigned to the securities fraud action, an appeal of its dismissal, on non-merits grounds, is pending before the Ninth Circuit. More importantly, the *Erhart* action is assigned to a different judge in this district; the undersigned has no control over the proceedings in that suit.

As a final matter, the Court does not agree with Plaintiffs that granting the proposed stay would be in the interest of efficiency. As just discussed, courts have found that a stay would promote efficiency when pending before them are parallel securities fraud and derivative suits. Staying the derivative suit in that scenario promotes efficiency because it prevents the need for the parties and the Court to litigate two cases at the same time, will likely lead to a narrowing of the issues in the derivative suit, and limits the possibility of inconsistent judgments. *See, e.g.*, *First Solar*, 2012 WL 6570914, at *2. But here, there are three items of litigation that must be considered, all of which are on separate timelines. What's more, at this moment, the relationship between this suit and the securities fraud action cannot be described as parallel; it is—to continue the math analogy—orthogonal. It is true that the outcomes of the *Erhart* and securities fraud cases might narrow the issues in this case. But it is also very possible that they will not. If the plaintiffs in those cases both lose, a stay of this case will have been for nothing. Permitting cases to languish on the Court's docket, even when stayed, is also a drain on this Court's resources. In all, the Court is not persuaded that any potential efficiency gains are weighty enough to make an otherwise inappropriate stay appropriate.

**IV. Conclusion**

The Court concludes that a stay of this case is not warranted. The Court DENIES Plaintiffs' motion to stay. As a result, the Court DENIES as moot Plaintiffs' motion to defer the deadline to file a second amended complaint until the proposed stay is lifted. Within 21 days of the date of this order, Plaintiffs shall file an amended complaint.

8

3:15-cv-02722-GPC-KSC

**IT IS SO ORDERED.**

Dated: August 21, 2018

Hon. Gonzalo P. Curiel
United States District Judge