UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE:

BofI HOLDING, INC. SHAREHOLDER
LITIGATION

Case No.: 3:15-cv-02722-GPC-KSC

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

**[ECF No. 128]**

## <u>INTRODUCTION</u>

This is a shareholder derivative suit, brought by a stockholder of BofI Holding, Inc., on behalf of the company, against Gregory Garrabrants, Andrew J. Micheletti, Eshel Bar-Adon, and John C. Tolla (collectively, "the Defendants"). Currently before the Court is Defendants' Motion to Dismiss the Second Amended Consolidated Shareholder Derivative Complaint ("the SAC") filed by BofI shareholder Andrew Calcaterra. ECF No. 128.

Following extensive motion practice over the last four years, Plaintiff's claims have been reduced to one seeking recovery against the Defendant directors and officers to reimburse "amounts [BofI] paid to outside lawyers, accountants, and investigators in

connection with BofI's internal investigation" by BofI's Audit Committee in April 2015. SAC ¶ 92. Defendants' motion to dismiss the SAC asserts that Plaintiff lacks standing to bring this shareholder derivative suit because he has failed to plead "demand futility" as to a majority of BofI's Board. In addition, Defendants contend that the Plaintiff has failed to state a plausible claim for relief against defendants to recover the costs incurred by BofI in connection with the April 2015 internal investigation. ECF No. 113 at 19.

Plaintiff does not dispute that, prior to filing the SAC, he has not made a demand upon the Board requesting that it respond to the misconduct alleged herein. Instead, Plaintiff argues that he was excused from making a demand because the derivative claims were already "validly in litigation." Thus, a key issue for this Court to address is whether Plaintiff's failure to make a demand on the Board is rightfully excused under the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 23.1(b)(3), and Delaware substantive law. *See, Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006).

Based upon a review of the moving papers, the applicable law, and for the foregoing reasons, the Court agrees that Plaintiff has failed to plead demand futility and that the failure is not excused. Moreover, the Court finds that Plaintiff has also failed to state a plausible claim for relief. Therefore, **GRANTS WITH PREJUDICE** Defendants' motion to dismiss the Second Amended Consolidated Shareholder Derivative Complaint.

## BACKGROUND

### A. Procedural Background

On December 3, 2015, Plaintiff filed a Verified Shareholder Derivative Complaint alleging breaches of fiduciary duty and other derivative claims arising from the individual defendants' false and misleading statements and omissions regarding BofI's internal controls, compliance with regulatory requirements, and the Company's current and future prospects for revenue and earnings growth. ECF 1. Thereafter, three derivative shareholder suits raising similar causes of actions were filed, consolidated and low-numbered to the instant case on June 9, 2016. ECF No. 31. Subsequently, on August 26,

2016, a Consolidated Verified Shareholder Derivative Complaint ("the CSC") was filed. ECF 36. Defendants' then filed a Motion to Dismiss the CSC on September 23, 2016 claiming that Plaintiff had failed to establish "demand futility." ECF No. 41. On March 1, 2017, the Court granted the motion by order ("BofI I") finding that Plaintiff had failed to provide particularized allegations demonstrating that a majority of the nine-person board was compromised or that demand was futile. ECF No. 54.

On April 10, 2017, a First Amended Consolidated Shareholder Derivative Complaint ("the ASC") was filed, ECF No. 65, and Defendants again moved to dismiss on the ground of demand futility. ECF No. 68. In the interim following the order dismissing the CSC and the filing of the ASC, the composition of the BofI board went from nine to eight board members. On August 8, 2017, finding that four members of the board were compromised, the Court concluded that demand on the eight-member board would be futile and denied the motion to dismiss ("BofI II"). ECF No. 75.

On March 7, 2018, Defendants filed a motion for judgment on the pleadings in which they asserted that the ASC's substantive allegations of liability were inadequate. ECF No. 95. Specifically, Defendants argued that the Plaintiffs' claims were unripe because they were predicated on the resolution of outside litigation involving a whistleblower lawsuit filed by Charles Matthew Erhart and a securities action. The Court granted the motion in part, concluding that the vast majority of Plaintiffs' claims were unripe and that the ASC's allegations describing BofI's harm, with the exception of the allegations that led to the internal investigation, were largely too vague to support Article III standing. ECF No. 117. Although the Court did not dismiss the entire ASC, the Court noted that the excessively prolix and substantially irrelevant ASC did not comply with Federal Rule of Civil Procedure 8's requirement that a pleading be "short and plain." Fed. R. Civ. Pro. 8. As it stood, the ASC's "length and inclusion of irrelevant information made evaluation of the surviving claims too difficult." ECF No. 125 at 5. The Court identified three specific instances of misconduct that caused BofI to incur internal investigation costs that were ripe and supported by sufficient standing allegations

to proceed.  ECF. No. 117 at 23.  The Court then required the second amended shareholder complaint to be "(1) confined to relevant allegations of wrongdoing, and (2) to name as defendants only those against whom specific conduct is alleged."  ECF No. 75.

On September 11, 2018, Plaintiff filed his Second Amended Shareholder Derivative Complaint (SAC).  ECF No. 128.  Defendants then filed their motion to dismiss the SAC contending that Plaintiff lacks standing to bring this shareholder derivative suit because he has failed to plead "demand futility" as to a majority of BofI's Board.  ECF No. 133.

## B. BofI Background

Nominal Defendant BofI Holding, Inc. ("BofI"), through BofI Federal Bank, provides online consumer and business banking products.  SAC ¶¶ 4, 5.  BofI is the holding company of BofI Federal Bank, and its shares are traded on the NASDAQ.  *Id*. ¶ 6.  Its deposit products include consumer and business checking, demand, savings and time deposit accounts, and its loan portfolio primarily consists of residential single-family and multifamily mortgage loans, commercial real estate secures and commercial lending products, finance factoring products, and other consumer lending products.  *Id*. ¶ 5.  Of chief importance to BofI Federal Bank is its practice of providing mortgages to high-net-worth individuals for the purchase of high-end properties.  *Id*. ¶ 47.

## C. BofI and the Individual Defendants

Until February of 2017, BofI was managed by a nine-member board of directors.  Those individuals included James S. Argalas, John Gary Burke, James J. Court, Uzair Dada, Paul Grinberg, Nicholas A. Mosich, Edward J. Ratinoff, Theodore C. Allrich, and Gregory Garrabrants.  In February of 2017, Allrich resigned from the Board.  ECF No. 130.  After an approximately eight-month interlude during which the Board operated with only eight board members, James Brandon Black was elected to fill the vacant ninth seat

on October 26, 2017.[1] ECF No. 133-3. This nine-member board of directors has managed BofI through the present day, including the date of filing the SAC. ECF No. 130. Although every member of the Board during the relevant period was named a Defendant in the Plaintiff's prior complaints, only Gregory Garrabrants, BofI's CEO, remains as a Director Defendant in the SAC. The remaining non-Board-member Defendants are Micheletti (Executive Vice President and CFO), Bar-Adon (Executive Vice President and Chief Legal Officer), and Tolla (Chief Governance Risk and Compliance Officer).

As officers and/or directors of BofI, Defendants held duties of trust, loyalty, good faith, diligence, fair dealing, and due care to BofI. SAC ¶¶ 32, 33, 34, 35, 36, 37. Defendants were obligated to comply with generally accepted accounting principles ("GAAP") as well as disclosure requirements imposed on officers and directors of publicly-traded companies. Defendants were also required to supervise the company in a reasonable and prudent manner. According to the SAC, Defendants knowingly breached those duties by allegedly (1) instructing senior auditors to obscure audit findings; (2) doctoring financial numbers and metrics; and (3) engaging in improprieties relating to the depositing of third-party checks into defendant Garrabrant's personal accounts. *Id.* ¶ 41.

### D. The Actions Leading Up to the Internal Investigation

On September 23, 2013, Charles Matthew Erhart, a former Financial Industry Regulatory Industry (FINRA) examiner, began working for BofI as an internal auditor, performing audits on a variety of aspects of BofIs operations, including conducting Sarbanes-Oxley testing. *Id.* ¶ 53. By December 19, 2013, Erhart had completed an internal audit of BofI's Structured Settlements and Lottery practice. *Id.* ¶ 54. Within the practice, BofI hosted a team responsible for calling individuals who received structured settlements in litigation or lottery payments with the goal of purchasing those income

---

[1] It was during this interlude that the Court dismissed the CSC for failure to allege "demand futility" and Plaintiff filed an ASC which survived another motion to dismiss for demand futility.

streams in return for a lump sum. *Id.* During his internal audit, Erhart discovered that BofI's callers may have failed to indicate to potential customers that the calls were being recorded, in possible contravention of California Penal Code § 632. *Id.* Erhart claims that less than two hours after he requested a standard meeting to conclude his audit, he and his supervisor, Vice-President Ball, were summoned to a meeting with Bar-Adon. *Id.* At the meeting, Bar-Adon allegedly instructed both employees to "remove evidence of the violation of California Penal Code § 632 from the Structured Settlements and Lottery audit." *Id.* ¶ 55. Erhart asserts that when Ball protested this request, Bar-Adon further instructed Erhart to mark the entire report as "Attorney Client Privileged" to prevent the finding from being discoverable in any potential class action litigation. Moreover, Erhart contends that Bar-Adon instructed him "not to speak to any employee in the Structured Settlements and Lottery Department with whom he was friendly." *Id.* Erhart claims that later that same day, Tolla instructed him to "never state in an audit report that BofI had violated a federal or state law." *Id.* ¶ 56.

In January 2014, Erhart alleges that Thomas Constantine, BofI's Chief Credit Officer, informed Erhart and Ball that "he could not be responsible for any of BofI's numbers after they are turned over to the CFO, Micheletti." *Id.* ¶ 57. Erhart asserts that he understood this comment – and Constantine's later reiteration that "he could not and would not vouch for the accuracy of the numbers once they had been delivered to Micheletti" – as an indication that Constantine believed Micheletti had changed the numbers upon receipt. *Id.*

Erhart also alleges that the Audit Committee had been aware of the details of his complaints, including the allegations of illegal conduct against Garrabrants, Bar-Adon, and Tolla, since at least December of 2014. *Id.* ¶¶ 109. At some point in December 2014, Erhart asserts that Tolla revised and downgraded a draft evaluation of Erhart's job performance prepared by Ball. According to the SAC, the Audit Committee purportedly "ratified" and approved the revision without instructing Tolla to restore Erhart's performance grade to the level initially determined by Ball. *Id.* Erhart believes that those

revisions served as retaliation for his whistleblowing activities. *Id.* On March 12, 2015, Bar-Adon, acting as General Counsel for the Audit Committee, met with Erhart. *Id.* As a result of that conversation, and because Grinberg was the person to whom reports of potentially unlawful conduct are directed, the SAC alleges that around this time, the Audit Committee must have become aware of Erhart's allegations of wrongdoing.

In early 2015 the following year, Erhart concluded his internal audit of the senior management's personal accounts. According to his later-filed complaint, Erhart allegedly "discovered that CEO Gregory Garrabrants was depositing third-party checks for structured settlement annuity payments into a personal account, including nearly $100,000 in checks made payable to third parties." *Id.* ¶ 62. Erhart also claimed that "the issue of Mr. Garrabrants' depositing of third-party checks had previously been raised to the Audit Committee before he started working at the Bank, and that restrictions were imposed on him." *Id.* Furthermore, Erhart asserted that Garrabrants was the signatory of a BofI consumer account opened in the name of his brother, Steven Garrabrants, with a balance of approximately $4 million, the largest consumer account at BofI at the time. *Id.* ¶ 63. Since Erhart could not find evidence of how Steven Garrabrants – a former minor league baseball player with an annual salary of $50,000 – came into possession of the large amount of money, Erhart expressed his concerns that "CEO Garrabrants could be involved in tax evasion and/or money laundering." *Id.* In his complaint filed later that year, Erhart claimed that he detailed these findings in a memo to his superiors but that BofI officers and directors once again failed to disclose the information in response to an SEC subpoena. *Id.* ¶ 62.

On April 27, 2015, BofI's Audit Committee met in San Diego for a formal Audit Committee meeting. *Id.* ¶ 113. At that time, the Audit Committee allegedly received a presentation with additional details regarding the Company's investigation into the complaints. *Id.* Defendants Micheletti, Bar-Adon, and Tolla were present at the meeting along with Audit Committee members Grinberg, Argalas, and Mosich. *Id.* During the meeting, Grinberg advised the other Audit Committee members about Erhart's

complaints. *Id.* Plaintiff contends that the meeting presumably included discussions and updates from the interviews conducted by the Audit Committee with internal audit personnel and the conversations that the Audit Committee had engaged in with the OCC. *Id.* Plaintiff asserts a reasonable inference can be made that additional details from the Company's investigation of Erhart's complaints were discussed despite contrary indications in the redacted-as-privileged portions of the meeting minutes. *Id.*

On October 13, 2015, Erhart filed a whistleblower action against BofI. *See* Erhart v. BofI holding, Inc., Case No. 15-cv-2287-BAS-NLS (S.D. Cal.) (filed Oct. 13, 2015). At the time, Erhart had worked for approximately two years as an internal auditor at BofI Federal Bank. SAC ¶ 7. In his complaint, Erhart alleged, among other things, that senior officers at the company had instructed him to "refrain from putting anything in writing regarding the Company's violations of laws" and to "label anything he did in his audit function which might be incriminating as 'attorney work product/communication.'" The next day, BofI's stock price dropped over 30 percent.

On October 15, 2015, BofI issued a press release and Form 8-K explaining that the Audit Committee and Board of Directors of BofI were fully informed of the events involving audit team members immediately after their occurrence in March 2015. The release further stated that "the Audit Committee then conducted interviews with internal audit personnel and held conversations with the Office of the Comptroller of the Currency." *Id.* ¶ 112. Following the Audit Committee interviews, BofI conducted an internal investigation that did not find sufficient evidence to support Erhart's allegations.

### E. Plaintiff's Allegations of Injury and Causes of Action

In response to the alleged actions that led to the investigation, Plaintiff, who held BofI stock during the relevant period, brings this derivative action. Plaintiff alleges that prior to the internal investigation by the Audit Committee, the four Defendants engaged in several instances of misconduct. These instances are identified in the SAC as (1) Bar-Adon and Tolla instructing Erhart and Ball to obscure audit findings; (2) Micheletti's doctoring of numbers; and (3) Garrabrants' depositing third-party checks into his

3:15-cv-02722-GPC-KSC

account. Plaintiff asserts that these actions directly and proximately caused BofI to expend significant sums of money in conducting an internal investigation into the allegations. SAC ¶ 92. Plaintiff further contends that the "amount of damages to BofI is substantial," and submits that "substantial portions" of BofI's reported expenses for professional services in 2015, including legal fees, were attributable to the fees and costs associated with the internal investigation into the misconduct allegations. *Id.* ¶ 93.

Based on these representations of wrongdoing, Plaintiff asserts the following claims against all of the Defendants, namely, (1) breaches of fiduciary duties, (2) abuse of control, (3) unjust enrichment, and (4) breach of duty of honest services. *Id.* ¶¶ 125-146. The SAC specifies that BofI has been damaged through the costs incurred from "amounts paid to outside lawyers, accountants, and investigators in connection with BofI's internal investigation." *Id.* ¶ 92. As forms of relief, Plaintiffs seek a declaration that they may maintain this action on behalf of BofI and that they are adequate representatives of BofI; a declaration that Defendants have breached (or aided and abetted the breach of) their fiduciary duties; a damages award to BofI; injunctive relief ordering BofI and Defendants to reform and improve its governance and internal procedures; a restitution award to BofI; and costs and fees.

Before filing his second amended shareholder complaint, Plaintiff did not make a demand on BofI's Board urging them to institute this action against the Defendants. *Id.* ¶ 103. Plaintiff alleges that he was excused from making a demand because the derivative claims were already "validly in litigation" and, in the alternative, making such a demand would have been futile because a majority of the Board lacks independence or faces a substantial likelihood of liability for their misconduct, thus rendering them incapable of fairly considering a demand. *See id.*

## JUDICIAL NOTICE

Before reaching the merits of the case, the Court will first address Defendants' three requests for judicial notice, as those requests inform the scope of the Court's review on this motion to dismiss.

3:15-cv-02722-GPC-KSC

In support of their motion to dismiss, Defendants have requested that the Court take judicial notice of excerpts of (1) BofI's Form 8-K filed with the SEC on October 30, 2017; (2) a March 3, 2018 Award of Arbitrator in BofI Federal Bank v. Veronica Golub (American Arbitration Association Case No. 01-16-0000-2318), filed in *BofI Federal Bank v. Veronica Golub* (S.D. Cal. Case No. 18-cv-00816-LAB-JMA), ECF No. 5; and (3) the holding in *Towers v. Iger*, 912 F.3d 523 (9th Cir. 2018). ECF Nos. 133-2, 133-2, and 143. Because the Court does not rely on the contents of the second and third requests, the Court DENIES those two requests as moot. But for the reasons that follow, the Court GRANTS Defendants' request to take judicial notice of BofI's October 30, 2017 Form 8-K which describes the addition of a newly elected member, James Brandon Black, to BofI's Board of Directors.

It is apodictic that a court may take judicial notice of facts outside the pleadings on a motion to dismiss. *See, e.g., Mack v. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). A court may consider matters that are: 1) authenticated documents that have been incorporated by the complaint or 2) facts subject to judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). Here, Defendants have asked the Court to take notice of the SEC Form 8-K that announces the election of James Brandon Black to BofI's Board of Directors, filling the ninth seat previously left vacant by former Director Allrich's retirement. Defendants' arguments with respect to the proper board for evaluating demand futility rely heavily on this additional fact. *See generally* ECF No. 133. Thus, because the 8-K Form is incorporated in Defendants' Motion to Dismiss, and because SEC filings are factual matters of public record, capable of accurate and ready authentication, it is the proper subject of judicial notice. *See, e.g., Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (taking judicial notice of a judicial docket). Accordingly, the Court GRANTS Defendants' request to take judicial notice of Defendants' Exhibit A. ECF No. 133-1.

///

## **LEGAL STANDARD**

### **A.  Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted.  Dismissal may be based on the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  For purposes of evaluating a motion to dismiss, a court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles,* 828, F.2d 556, 561 (9th Cir. 1987).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[F]or a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)).

### **B.  Fed. R. Civ. P 23.1**

A derivative shareholder's claim allows an individual stockholder to bring "suit to enforce a corporate cause of action against officers, directors, and third parties." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)).  "Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Id.* (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)) (quotations omitted).

This derivative right, however, is not absolute.  Before a shareholder can act on behalf of the corporation in this manner, he or she must demonstrate "that the corporation

itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Id.* at 95-96 (quoting *Ross*, 396 U.S. at 534). This precondition is codified at Federal Rule of Civil Procedure 23.1:

> The complaint must be verified and must: . . . (3) *state with particularity*: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) *the reasons for not obtaining the action or not making the effort*.

Fed. R. Civ. P. 23.1 ("Rule") (b)(3) (emphasis added). Rule 23.1 provides the pleading standard for measuring the factual detail present in a shareholder complaint, but does not provide the substantive rule for assessing what reasons are sufficient to excuse demand on the corporation. *See Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014). That rule is supplied by the law of the state of incorporation, *Kamen*, 500 U.S. at 109, which in this case is Delaware, BofI's state of incorporation, *see* ASC ¶ 18.

### C. Demand Futility Under Delaware Law

#### 1. Tests for Demand Futility

In order to show demand futility under Delaware law, a shareholder must satisfy one of two tests. *Rosenbloom*, 765 F.3d at 1149-50. The *Aronson* test applies when a shareholder challenges a decision made, or a transaction entered into, by the corporation's board of directors. *See Rales v. Blasband*, 634 A.2d 927, 932-33 (Del. 1993). To satisfy the *Aronson* test a shareholder must allege particularized facts giving rise to a reasonable doubt that, at the time the complaint was filed, (1) the directors were disinterested and independent or (2) the underlying transaction was the product of a valid exercise of business judgment. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999) (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).

Alternatively, if the shareholder does not challenge a board decision, but rather board inaction, for instance, then the *Rales* test applies. *Rosenbloom*, 765 F.3d at 1150. The *Rales* test requires a stockholder to put forth particularized factual allegations that "create a reasonable doubt that, as of the time the complaint is filed, the board of

directors could have properly exercised its independent and disinterested business judgment in responding to demand." *Rales*, 634 A.2d at 934. Stated differently, the *Rales* test requires the shareholder to satisfy the first prong of the *Aronson* test. *In re Bidz.com Deriv. Litig.*, 773 F. Supp. 2d 844, 852 (C.D. Cal. 2011).

### 2. Particularity Requirement

Delaware Rule 23.1, like its federal counterpart, requires a shareholder to plead facts with particularity, which is a more stringent standard than that required by ordinary notice pleading. *See Brehm*, 746 A.2d at 255 ("[t]hose pleadings must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings"). The rationale behind Delaware Rule 23.1's heightened pleading standard, the Delaware Supreme Court has noted, is two-fold:

> *Aronson* and its progeny is designed to create a balanced environment which will: (1) on the one hand, deter costly, baseless suits by creating a screening mechanism to eliminate claims where there is only a suspicion expressed solely in conclusory terms; and (2) on the other hand, permit suit by a stockholder who is able to articulate particularized facts showing that there is reasonable doubt either that (a) a majority of the board is independent for purposes of responding to the demand, or (b) the underlying transaction is protected by the business judgment rule.

*Id.* at 255 (citing *Grimes v. Donald*, 673 A.2d 1207, 1216-17 (Del. 1996)). Cast in this light, Delaware's particularity requirement is seen not just as a rigid procedural requirement but as a substantive rule of Delaware law that requires plaintiffs to make a strong, threshold showing that making a pre-suit demand would have been futile. *See In re Sonus Networks, Inc., S'holder Deriv. Litig.*, 499 F.3d 47, 66 (1st Cir. 2007) (applying Delaware law on demand futility).

Accordingly, when assessing a motion to dismiss for failure to comply with the requirements of Federal Rule 23.1 and Delaware law, a court should credit the shareholders with "all reasonable factual inferences that logically flow from the particularized facts alleged." *Rosenbloom*, 765 F.3d at 1148. A court should not, however, take as true "conclusory allegations of facts or law not supported by allegations

of specific fact." *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1079 (C.D. Cal. 2008) (quoting *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991)) (internal quotations omitted). "Conclusory allegations" are those that add "no, or only *de minimis*, substance to the Court's demand-futility inquiry." *See Khanna v. McMinn*, 2006 WL 1388744, *14 (Del. Ch. May 9, 2006). By contrast, particularized facts are "substantive allegations that are by themselves insufficient but, when viewed *in toto*, may push the analysis over the threshold of "reasonable doubt" and thereby excuse [ ] demand." *Id.*

## DISCUSSION

### A. The *Rales* Test Under Rule 23.1

Since the plaintiff does not challenge a board decision in seeking to recover costs from Garrabrants, Micheletti, Bar-Adon, and Tolla for actions that culminated in an internal investigation, the *Rales* test applies. Thus, a pre-suit demand on BofI's board is futile under Rule 23.1 if the SAC provides "sufficient particularized factual allegations that 'create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to demand." *Rales*, 634 A.2d at 934.

### B. Demand Futility on New Board of Directors

This is the third time that Defendants have raised demand futility as a basis to dismiss the operative complaint. Originally, in March 2017, the Court dismissed the complaint concluding that Plaintiff had failed to provide particularized facts demonstrating demand futility as to a majority of the then nine-person board. Thereafter, on August 8, 2017, the Court found that demand futility had been established as to the eight-man board in place. Now, BofI is asking the Court to once again review Plaintiff's amended complaint for compliance with demand compliance with the current nine-man board on the grounds that an amended complaint typically triggers a "demand on the board of directors in place at that time the amended complaint is filed" and not when the original complaint was filed. *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006). However, under Delaware law, "when an amended derivative complaint is filed, the

existence of a new independent board of directors is relevant to a Rule 23.1 demand inquiry only as to derivative claims in the amended complaint that are not already *validly in litigation*." *Id.* (emphasis added).

*Braddock* dictates that three circumstances must exist to show that prior derivative claims were "validly in litigation" to excuse a plaintiff from showing demand futility with respect to the sitting board at the time of the filing of the amended complaint: (1) "the original complaint was well pleaded as a derivative action"; (2) "the original complaint satisfied the legal test for demand excusal"; and (3) "the act or transaction complained of is essentially the same as the act or transaction challenged in the original complaint." *Id.* "Validly in litigation" means a claim that "can or has survived a motion to dismiss." *Id.* at 779. However, one court applying *Braddock* concluded that "the filing of an amended complaint may trigger a new requirement to make demand if the earlier complaint could not have survived a motion to dismiss, even if it had not actually been dismissed." *In re NYFIX, Inc.*, 567 F. Supp. 2d 306, 311 (D. Conn. 2008) (citing *Braddock*, 906 A.2d at 778)."

In positing that a new demand must be made with respect to the current board, Defendants argue that Plaintiff cannot satisfy factors (1) and (2) to show that the derivative claims in the SAC were "validly in litigation" at the time it was filed. Defendants offer the view that the Court must specifically address and approve each claim in order for it to be "validly in litigation." They advance that the Court's prior August 8, 2017 Order Denying Defendants' Motion to Dismiss the ASC ("BofI II"), ECF No. 75, held that demand was excused only for whistleblower and securities claims – claims later deemed unripe and removed from litigation in the Court's June 7, 2018 Order Granting in Part Motion for Judgment on the Pleadings. *See generally*, ECF No. 117. On this point, Defendants articulate that BofI II did not determine whether demand was excused as to the Plaintiff's sole remaining claim to recover BofI's investigation costs arising from Erhart's allegations of wrongdoing.

Plaintiff responds that the ASC was a well-pleaded action that satisfied demand excusal because this Court never dismissed, in full, the prior claims in the ASC that are re-asserted in the SAC. *Id.* at 8. Plaintiff takes the position that BofI II necessarily found that any claims or theories arising from allegations in the ASC are "validly in litigation." Although he acknowledges that the Court did not engage in individualized analysis for the remaining investigation costs claim, Plaintiff argues that BofI II evaluated the claims together as a whole in finding that demand was futile. *Id.* As such, Plaintiff submits that he is excused from establishing demand excusal against the current board since neither BofI II nor the Court's order for judgment on the pleadings dismissed the original complaint in totality.

Settled Delaware state law requires a claim by claim analysis in determining whether a plaintiff has met the demand exhaustion requirement. *Beam v. Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003); *Feuer v. Redstone*, 2018 WL 1870074 (Del. Ch. 2018). In this case, the August 8, 2017 BofI II order did not engage in a claim by claim analysis that included the remaining claim. Nor did the Defendant's motion to dismiss the ASC. Given the prolix nature of each of the prior shareholder derivative complaints, it is unsurprising that neither the Court nor the Defendant sought to compartmentalize each separate possible claim in the ASC. Although the Court passed upon, and excused with particularity, demand requests for the whistleblower and securities violation allegations in BofI II, nothing in the record suggests that the Court has ever engaged in analysis that concluded a pre-suit demand would have been futile with respect to *this* remaining internal investigation based claim. *See generally,* BofI II. Those two whistleblower and securities based claims – which served as the bedrock for the prior demand futility holding – have since been dismissed as unripe. ECF No. 117 at 27. The allegations that this Court found actionable then with respect to demand futility now appear nowhere in the SAC. And as pointed out by Defendants, the instant surviving claim was only uncovered in the Court's Order for Judgment on the Pleadings which concurrently noted that the Court could not meaningfully move forward with that singular

ripe but undefined claim absent a significant revision of the ASC. ECF No. 117 at 27. Thus, the Court unequivocally did not pass upon the claim in its prior review of demand futility.

Plaintiff argues that for the Court to comply with *Rosenbloom*'s mandate, *Rosenbloom v. Pyott*, 765 F.3d 1137, 1155 (9th Cir. 2014), it cannot consider demand-futility allegations in isolation and must consider all well-pleaded allegations as a whole. In fact, the Court did consider the well-pleaded allegations as a whole with respect to the unripe whistleblower and securities claims. However, the Court finds *Rosenbloom* inapplicable here when the remaining claim was pleaded insufficiently for the court to meaningfully evaluate the internal investigation costs claim during its claim-by-claim analysis of the Second Amended Complaint in BofI II.

In looking to the Court's prior Order on the Motion for Judgment on the Pleadings, the Court was unable to engage in the required analysis when the 146-page ASC was too vague and onerous to lend itself to evaluation of the existing ripe claim without amendment. Furthermore, Plaintiff argues that it is "impermissible, but also impossible and illogical to compartmentalize Plaintiff's demand-futility allegations." ECF No. 138 at 11. This argument is unpersuasive in light of the Order for Judgment on the Pleadings, which *expressly directed* that Plaintiff compartmentalize its allegations and (1) specifically separated the unripe claims from the limited remaining ripe claim; (2) allowed Plaintiff to proceed only on the claims relating to actions by Defendants that caused BofI to investigate Erhart's allegations; and (3) instructed the Plaintiff to proceed on the grounds that the amended complaint be confined to only the relevant allegations of wrongdoing and be asserted against *only* those defendants against whom specific conduct is alleged.

The Court now confronts the question: if BofI II did not pass upon the investigation claims in its demand futility analysis, was that surviving claim still "validly in litigation?" With respect to the first *Braddock* factor, the primary theories in the ASC that were carefully evaluated as per *Rosenbloom*'s mandate, i.e, the whistleblower suit

3:15-cv-02722-GPC-KSC

and the securities claims, are no longer in the litigation. There is no analysis relating to a claim based upon the internal investigation costs claim. It strains credulity to discern and conclude that the instant claim was present in the ASC independent of the unripe whistleblower claim in any intelligible way.

As to the second *Braddock* factor, the Court finds that Plaintiff has not proven and the record does not support the conclusion that the remaining claim satisfied the legal test for demand excusal. It is the Plaintiff's burden to establish that demand futility had previously been found with respect to each and every claim. As observed above, the internal investigation costs claim was not clearly identified in the ASC as a separate and distinct claim. Consequently, the Court did not and could not previously evaluate demand futility with respect to investigation costs resulting from the Audit Committee's internal investigation. As such, demand on the board was not excused and the claim did not proceed "validly in litigation" in the ASC. Further evidence can be seen by conducting demand futility analysis on the remaining claim. In the next section, the Court concludes that, as to the internal investigation claim, Plaintiff failed to establish demand futility with respect to four board members.

The Court concludes that the filing of the SAC has triggered an obligation to make a new demand upon the directors because the original complaint did not legally satisfy demand excusal for this claim. Though the Court was unable to previously evaluate demand futility with respect to actions arising from Erhart's allegations that led to the internal investigation, it can do so now under the nine-person board in place when the SAC was filed.

## C. Demand Futility Analysis

As a preliminary matter, the current board includes one individual who joined after the events at issue in this case. That individual, Black, is both a non-executive director and considered disinterested as a matter of law. *See Sandys v. Pincus*, No. CV 9512-CB, 2016 WL 769999, at *15 (Del. Ch. Feb. 29, 2016). BofI's other board members include four non-executive directors (Burke, Court, Ratinoff, and Dada) who have never been the

target of the Plaintiff's cognizable factual allegations of wrongdoing. This Court has not articulated – even in its prior review of the unripe claims – any basis for demand excusal with respect to the non-executive directors. Although the Plaintiff previously asserted claims against Audit Committee Director-Defendants Argalas, Grinberg, and Mosich, those claims have since been dropped after the issuance of this Court's Order Granting Judgment in Part on the Pleadings, which held those claims to be overbroad and unripe. Only one Director-Defendant, Garrabrants, remains implicated in the SAC. Yet as it stands, Plaintiff must show that demand is excused with respect to five out of the remaining eight directors to implicate a majority of the current board.

As instructed by the Court, Plaintiff only asserts four specific allegations of misconduct against four discrete individuals in the newly-streamlined SAC: (1) Bar-Adon instructing Erhart and Ball to obscure audit findings; (2) Tolla instructing Erhart to never state in an audit report that BofI had violated a federal or state law; (3) Micheletti's possible doctoring of company numbers prior to disclosure to the public; and (4) Garrabrants' questionable account deposits of nearly $100,000 in checks made payable to third parties and his control of BofI's largest deposit account, maintained in his brother's name. According to Plaintiff, these acts of misconduct spawned an internal investigation with costs he now seeks to recover. Plaintiff postulates that a pre-suit demand on the Board would have been a "futile and useless act" because "the Board faces a substantial likelihood of liability." SAC ¶ 12. In turn, Defendants move to dismiss the SAC on the basis that it fails to plead, as required by Rule 23.1 and Delaware law, that a majority of the Board of Directors faced a "substantial likelihood" of personal liability for the claim asserted.

In his opposition to Defendants' motion to dismiss, Plaintiff advances six theories of demand futility. One, that the Court's August 8, 2017 order in *BofI S'holder Litig. II* established demand futility "for claims against Bar-Adon, Tolla, Micheletti, and Garrabrants." SAC ¶ 98. Two, that the demand would have been futile "due to the hostility displayed by the Individual Defendants as well as the other [now-former

defendant] directors, toward this action since its inception." SAC ¶ 99. Three, that all members of the Board "face a substantial likelihood of liability for breaching their fiduciary duties by causing [BofI] to violate the anti-retaliation provisions of Sarbanes-Oxley, Dodd-Frank, and other laws." SAC ¶¶ 117, 120. Four, that the Court should infer that the directors acted with intent and bad faith because the internal control and potential compliance issues alleged by Erhart "concerned the Company's core (and only) – business – consumer and banking products and services. SAC ¶ 118. Five, that the directors' receipt of compensation and loans creates reasonable doubt about their independence and disinterestedness. *See* SAC ¶¶ 122-123. And six, that Grinberg faces a substantial likelihood of liability for failing to disclose a $31.9 million loan BofI made in 2014 to the affiliate of a company that then employed Grinberg. For the following reasons, the Court rejects each of these arguments and concludes that Plaintiff has failed to meet his burden to establish demand futility with respect to a majority of the board.[2]

## 1. Whether the Court Previously Established Demand Futility for Claims Against Bar-Adon, Tolla, Micheletti, and Garrabrants

As explained above, the Court did not previously consider the present aspect of the plaintiff's claims against Garrabrants, Micheletti, Bar-Adon, and Tolla to recover costs expended by BofI in connection with the Audit Committee's April 2015 internal investigation in its previous analysis of demand futility in BofI II. The claim now at issue was not "validly in litigation" at the time of the ASC and demand futility must be evaluated anew. Thus, the Court's prior BofI II order establishing demand futility with respect to other separate since-dismissed and unripe claims is inapplicable here.

//

//

---

[2] The Court has articulated that the nine-person board seated at the time of the SAC's filing is the correct board under which to evaluate demand futility. However, the Court notes that in applying the same reasoning as follows, the plaintiff would also have failed to demonstrate demand futility with respect to the old eight-member interim board in place during the filing of the ASC.

## 2. Hostility

Plaintiff also alleges that demand would have been futile "due to the hostility displayed by the Individual Defendants, as well as the other [now-former defendant] directors, toward this action since its inception." SAC ¶ 99. However, mere "hostility," without more, is insufficient to prove demand excusal. Certainly, a board is entitled to defend against a claim that they in good faith dispute. Allegations that directors would refuse demand due to hostility meets the demand futility standard under *Rales* only if refusal would have been wrongful. As it stands, Plaintiff does not assert in his generalized hostility theory how directorial hostility would have led to wrongful refusal of the demand to recover, against Garrabrants and non-directors Bar-Adon, Tolla, and Micheletti, the costs of the exonerative internal investigation into their actions. Furthermore, Plaintiff has not identified and this Court is unaware of any authority that has held pre-suit demand to be futile on the basis of mere hostility. Accordingly, the Court holds that Plaintiff's theory of hostility is insufficient to prove demand futility.

## 3. Substantial Likelihood of Liability for Breach of Fiduciary Duties

Next, Plaintiff argues that all Board members "face a substantial likelihood of liability for breaching their fiduciary duties by causing [BofI] to violate the anti-retaliation provisions of Sarbanes-Oxley, Dodd-Frank, and other laws." SAC ¶¶ 117, 120. While the Court held in BofI II that the Board would be disabled with respect to considering the retaliation and wrongful termination claims against Erhart, the Court later dismissed those claims as unripe. Plaintiff, in accordance with the Court's earlier ruling, does not replead those unripe claims in the SAC.

Plaintiff also fails to explain why either the old or new Board would be disabled from now considering the relevant claim at issue – to recover costs incurred as a result of the AC's investigation into allegations of internal control violations. All referenced paragraphs in the SAC that provide support for this theory, SAC ¶¶ 67-74, 85-90, 114-116, refer *only* to the Board's knowledge and actions in light of Erhart's wrongful termination, which are no longer part of the SAC. The plaintiff provides no additional

factual inferences to connect this theory to the sole remaining claim. Although the Court held that the Plaintiff previously met the *Rales* test with respect to the Audit Committee directors (Grinberg, Mosich, and Argalas) and Garrabrants, it did so before holding that the claims asserted against them were unripe and before Grinberg, Mosich, and Argalas were dropped as Defendants in this action. At this point in the proceedings, the Audit Committee directors face only the threat of possible liability on unripe claims at an indeterminate future juncture. This does not rise to the standard of substantial likelihood of liability required to excuse demand under *Rales*.

And finally, Plaintiff also does not allege facts explaining why potential liability on an unripe and dismissed claim contingent on the outcome of separate *Erhart* litigation would preclude a majority of BofI directors from adequately considering *this* separate claim to recover from three non-board members and one single Defendant-Director the costs of an internal investigation.

Accordingly, the Court holds that Plaintiff's arguments premised on the directorial breach of fiduciary duty are insufficient to prove demand futility.

### 4. Intent and Bad Faith Due to Core Services

Plaintiff argues that the alleged misconduct of Garrabrants, Micheletti, Bar-Adon, and Tolla concerned BofI's core business and therefore imputes "knowledge and conscious misconduct" on the Board. According to Plaintiff, the instances of alleged conduct that led to the internal investigation could conceivably impart substantial liability onto the directors for disregarding their oversight duties. However, Plaintiff's only claim in the SAC is to recover for the internal investigation. Plaintiff does not submit a well articulated and cognizable *Caremark* failure-of-oversight claim against the directors.

Plaintiff's "core services" theory to plead demand futility is unsupported by law or the factual allegations. First, the Court agrees with the Defendants that as a matter of law, the "core operations" presumption does not apply in shareholder derivative

litigation.[3] *See In re Yahoo! Inc. S'holder Deriv. Litig.*, 153 F. Supp. 3d 1107, 1123 n.10 (N.D. Cal. 2015) (citing *In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919, 928 (N.D. Cal. 2010)) (noting that the "so-called core operations inference" doctrine has no application in derivative litigation). Second, the Court finds that the directors do not face a substantial likelihood of personal liability for failure-of-oversight since Plaintiff does not assert a discernable claim related to core services theory in the SAC. And finally, the "core services" theory of demand futility does not apply to the isolated instances of internal control or compliance issue here.

According to the Delaware Supreme Court, a failure-of-oversight *Caremark* claim requires the Plaintiff to show that (1) internal control and compliance issues were pervasive and material; and (2) the directors deliberately and completely abdicated their responsibilities in establishing and monitoring systems of internal compliance controls. *See Oklahoma Firefighters Pension & Ret. Sys. V. Corbat*, 2017 Del. Ch. LEXIS 848, at *19-22, 50-55 (Del. Ch. Dec. 18, 2017). Here, the discrete instances of misconduct in the SAC that led to the investigation include: (1) Bar-Adon instructing Erhart and Ball to obscure audit findings; (2) Tolla instructing Erhart to refrain from indicating in his audit reports that BofI had violated a federal or state law; (3) suspicions that Micheletti doctored BofI's numbers before release to the public; and (4) Garrabrants' depositing of a third party check into a personal account and his control of a BofI deposit account in his brother's name. Though Plaintiff cites to *Rosenbloom v. Pyott* as an example that supports director liability in instances of internal control allegations, the instant matter could not be more different from the facts in that case, where a pervasive years-long,

---

[3] *In re Yahoo!* articulates that in order to apply the core operations theory of imputed knowledge in derivative litigation, a plaintiff "must allege more than that directors should have known or must have known about matters relating to the corporation's 'core business'" and that even in securities cases, "the core-operations inference only allows a court to infer executives' knowledge about their own company's core operations." 153 F. Supp. 3d 1107, 1123 n.10 (N.D. Cal. 2015) (quoting *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782-83 (9th Cir. 2008)). Plaintiff has given no factual basis to support that the Directors face a finding of substantial likelihood of liability under that higher – or any – standard.

large-scale board-approved corporate policy of illegality was at issue. 765 F.3d 1137 (9th Cir. 2014). In contrast, Plaintiff inserts one single passing reference in the SAC – without additional pillars – that the "Board authorized the internal investigation as a cover-up for its own conduct." SAC ¶ 13. This statement is conclusory and unsupported at best. In what is an underdeveloped and skeletal *Caremark* claim, Plaintiff has failed to demonstrate a substantial likelihood of director liability that would impede a majority of the Board from evaluating internal investigation costs from four BofI officers.

### 5. Directors' Receipt of Compensation and Loans

In keeping with this Court's holding in *BofI I*, ECF No. 54, the Court once more finds that Plaintiff's compensation-related allegations are insufficient to establish demand futility. Although a plaintiff may establish demand futility by showing that directorial interest taints a majority of the board members, "it is not enough, for demand futility purposes, to rely on the amount that a director is compensated as evidence of nonindependence." ECF No. 54. *See also In re Countrywide*, 554 F. Supp. 2d at 1078 ("While these numbers [$358,966 to $538,824] may be substantial, the Court cannot conclude, without more, that they are "so lavish that a mechanical application of the [presumption of director independence] would be totally at variance with reality") (quoting *Grobow v. Perot*, 526 A.2d 914, 923 n.12 (Del. Ch. 1987) *aff'd* 539 A.2d 180 (Del. 1988)). Even so, Plaintiff again questions board members' independence because all board members receive compensation and a majority of the Board (namely, Argalas, Burke, Garrabrants, Grinberg, and Mosich) received below-market mortgage rates through BofI's mortgage-lending program designed for its directors, officers, and employees.

However, Plaintiff pleads no additional facts in the SAC to convince the Court to change its initial stance from *BofI I*. As the Court indicated previously, Plaintiff has failed to adequately plead or explain how the receipt of a single loan on a primary residence at below-market rates can be of "such subjective materiality to the Board members that a majority of them could not consider a shareholder demand." ECF No. 54

at 33. Moreover, the benefits that the Board members receive do not arise from the challenged transaction, a fact that – as the Court previously noted – diminishes any inference of partiality. ECF No. 54 at 33. *See also Rales*, 634 A.2d at 933. Once again, Plaintiff relies on *Mizel v. Connelly*, which the Court previously distinguished from the present case.[4] ECF No. 54 at 34. Merely articulating that the majority of the Board once took advantage of a company-wide program that provided each member with a single below-market favorable mortgage, without alleging how that benefit would indefinitely disqualify a majority of members from exercising independent judgment, is insufficient for this Court to presume directorial interest with respect to recovering costs for an internal investigation that stemmed from allegations against Garrabrants, Micheletti, Bar-Adon, and Tolla. Given the complete absence of additional facts, the Court has no reason to depart from its earlier ruling that *Mizel* is inapposite and that Plaintiff fails to plead a sufficient basis upon which the Court can reasonably conclude that Board members' judgment is impaired by the receipt of board-related compensation and a single loan at below-market rates.

## 6. Grinberg's Liability for Undisclosed Affiliate Loan

Plaintiff contends that Grinberg is further interested in this litigation because he breached his fiduciary duty in failing to disclose a $31.9 million loan between BofI and his employer Encore Capital in 2014. However, Plaintiff does not assert a claim against Grinberg – or anyone else – for the nondisclosure. As Defendants note, Plaintiff also

---

[4] In its prior *BofI I* order, the Court held that:
"The instant matter could not be more different from the facts of *Mizel*. There is no obvious connection between the conduct that the shareholders challenge (i.e., Erhart's dismissal and the violations he uncovered) and the fact that the board members can take advantage of a company-wide policy regarding loan rates. Moreover, the emolument at issue, here, was taken advantage of only once, on each of the above-mentioned Director Defendants' primary residences, and contrary to what Plaintiff argues, there is no basis for reasonably concluding that a loan, a contract, would somehow be rescinded or modified just because the Director Defendants decided to consider the shareholders' demand. As such, the Court rejects Plaintiff's cursory conclusion that the board members would be 'jeopardizing the mortgages on their primary residences' by considering a shareholder demand.'" ECF No. 54 at 34.

does not allege that any party has asserted a claim against Grinberg for the alleged nondisclosure. ECF No. 133 at 19. Moreover, Plaintiff does not articulate how the nondisclosure or potential liability for the nondisclosure could impact Grinberg's or other board members' fairness in considering a demand to sue four BofI officers to recover the costs of the Audit Committee's wholly unrelated investigation of unconnected actions. For those reasons, the Court does not find a viable theory for demand excusal based on the sparse facts and the absent analysis originating from Grinberg's non-disclosure of a stand-alone loan.

The eight current non-executive members of BofI's Board, including all seven non-executive members of the Board at the time the plaintiff filed the ASC – are no longer defendants in this case. James Black, the newest director, is presumed disinterested as a matter of law and Plaintiff does not put forth any facts that would impugn his independence or implicate any biases. Micheletti, Bar-Adon, and Tolla have never been members of BofI's Board. With the exception of Garrabrants – who alone faces a substantial likelihood of liability, the remaining Board members past and present do not face any existing likelihood of personal liability with respect to the sole claim asserted in the SAC against Garrabrants, Micheletti, Bar-Adon, and Tolla. As it follows, the Court does not find that a majority of the Board faces a substantial likelihood of liability that would render demand futile.

**D. Rule 12(b)(6)**

As an antecedent matter, the Court has found above that Plaintiff cannot establish demand futility for a majority of the board under Rule 23.1. However, the Court notes that Plaintiff also fails to state a claim for relief on behalf of BofI to recover investigation costs against the Defendants. Throughout the SAC, Plaintiff does not identify any authority or apparent theory that might allow stockholder plaintiffs to bring a claim to recover investigation costs against the subjects that were exonerated by the investigation. He does not point to any factual allegations connecting the independent directors to the internal control missteps reported by Erhart. He does not substantiate that the Defendants

breached any legal duty. He neglects to put forth any facts that would call into question the integrity of the Audit Committee's investigation into Erhart's allegations. And he does not call into question the investigation's completeness or the efficacy of its conclusions. Plaintiff's only corresponding assertion is a single threadbare allegation that the Audit Committee's investigation was a "cover-up" authorized by the Board to conceal "its own misconduct." SAC ¶ 13. This allegation is textbook conclusory – devoid of any additional factual support that might substantiate the claim. In its current form, the sole remaining claim is functionally an injury without a cause of action, akin to a tail in search of a dog. And after three attempts to state viable and ripe claims, the Plaintiff has still failed to identify any theory or new facts that might state a plausible claim for relief. Accordingly, the Court finds that the SAC does not contain sufficient factual matter to survive under Rule 12(b)(6).

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

# **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss under Rules 23.1 and 12(b)(6) of the Federal Rules of Civil Procedure. The SAC is the plaintiff's third pleading attempt. In these papers, Plaintiff fails to identify credible reasons to forgo a renewed demand futility analysis. Plaintiff also neglects to substantiate a plausible claim for relief. Despite the Court's instruction that the Plaintiff's SAC must be limited only to the claims that led to the internal investigation, Plaintiff continues to rely substantially on irrelevant facts that are pertinent only to claims that this Court dismissed as unripe. And finally, Plaintiff's assertion that leave to amend is warranted due to his ability to obtain additional corporate records through a stockholder inspection demand is uncompelling in light of his inaction in two years to challenge the completeness of BofI's production. Accordingly, this motion to dismiss is **GRANTED WITH PREJUDICE.**

**IT IS SO ORDERED.**

Dated: May 23, 2019

Hon. Gonzalo P. Curiel
United States District Judge

3:15-cv-02722-GPC-KSC